IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 9:16-CV-81663-DMM

HERCULES CAPITAL, INC. (F/K/A
HERCULES TECHNOLOGY GROWTH
CAPITAL, INC.),

        Plaintiff,

v.

DANIEL J. GITTLEMAN, DAVID BARCLAY,
AND HOWARD A. KWON,

        Defendants.
_____/

## ORDER AND OPINION DENYING CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT

THIS CAUSE comes before the Court upon cross-motions for partial summary judgment, filed by Plaintiff Hercules Capital, Inc. (f/k/a Hercules Technology Growth Capital, Inc.) ("Hercules" and "Hercules' Motion," respectively) (DE 53) and by Defendants Daniel J. Gittleman ("Gittleman"), David Barclay ("Barclay"), and Howard A. Kwon ("Kwon") (together, "Defendants" and "Defendants' Motion") (DE 51). Each Motion has been fully briefed. For the reasons stated below, both Hercules' Motion and Defendants' Motion are denied.[1]

### I.    BACKGROUND

This action concerns an alleged civil conspiracy between and misrepresentations by officers of a corporation, which purportedly resulted in financial harm to the corporation's

---

[1] In addition, Defendants' Motion to Strike Plaintiff's Reply (DE 82) is denied because the actual text that exceeded the ten page limit was a one-sentence generic conclusion upon which the Court did not rely. Neither did the Court rely on the allegedly offending exhibit attached to Hercules' Reply. Relatedly, in their Reply in support of their Motion for Partial Summary Judgment (DE 79), Defendants seek to strike a supplemental expert report and certain use of deposition testimony. That is denied because the request was combined with their Reply and not separately filed as a motion. A party cannot move for new or additional relief in a reply supporting its own previously filed motion. *See Horne v. Potter*, No. 07-61829, 2009 WL 10667086, at *1, n.2 (S.D. Fla. Mar. 11, 2009) (Rosenbaum, M.J.).

principal lender. Hercules is a "venture debt lender" that specializes in loans to "high-growth, innovative venture-backed companies" in the "technology and life sciences industries." (DE 42, "Second Amended Complaint" or "Compl.," at ¶ 3). It is a citizen of both Maryland and California. (*Id.*). Nonparty OpenPeak, Inc. ("OpenPeak") is a now-bankrupt software developer that focused on providing "mobile cybersecurity solutions." (*Id.* at ¶¶ 4, 159; DE 51 at 1). Its "core product," known as Advanced Device Application Management ("ADAM"), was a platform designed to provide a secure means for employees to use their mobile devices on company premises. (PSOF at ¶ 1).[2] The three Defendants were officers of OpenPeak. Gittleman, a Florida citizen, served as OpenPeak's Chairman of the Board and Chief Executive Officer. (Compl. at ¶ 5). Barclay, a Washington citizen, served as its Executive Vice President. (*Id.* at ¶ 6). Kwon, a Florida citizen, was OpenPeak's Vice President and General Counsel. (*Id.* at ¶ 7).

On April 3, 2012, OpenPeak entered into a contract (the "Master Resale Agreement" or "MRA") with the telecommunications company AT&T Services, Inc. ("AT&T"). (PSOF at ¶ 2). Although the Parties debate the scope of the MRA and the rights attached thereto, the thrust of the agreement was that OpenPeak would sell individual licenses of the ADAM platform to AT&T, which AT&T would then resell to customers under the brand name "Toggle." (*Id.*). Particularly as it relates to Defendants' Motion, the MRA also included a supplemental

---

[2] Pursuant to Local Rule 56.1(a), Hercules filed a Statement of Undisputed Facts on June 6, 2017, the day after it filed the Hercules Motion. (DE 54). Defendants filed a Statement of Disputed Facts in response to Hercules' statement on June 19, 2017 (DE 67), which was filed in conjunction with their Response brief (DE 68). Defendants also incorporated an extremely abridged Statement of Uncontested Facts into their Motion. (DE 51 at 4). Except where Defendants introduce additional facts or dispute those raised by Hercules, the Court will refer solely to Hercules' Statement, which is styled "PSOF" (Plaintiff's Statement of Facts). Defendants' response statement, where referenced, is labeled "DSOF" (Defendants' Statement of Facts). The Statement drafted in support of Defendants' Motion, where referenced, is labeled "DMF" (Defendants' Motion Facts).

2

agreement, called "Amendment 6." (*See* DMR at ¶¶ 2-3; DE 51-3, Gittleman Decl., Ex. 2). Amendment 6 contains certain language concerning the categorization and billing of the Toggle licenses. (*Id.*). The Parties dispute the interpretation of this language.

On March 30, 2012, shortly before entering into the MRA, OpenPeak obtained a $15 million loan from Hercules, the terms of which were memorialized in the 2012 Senior Term Debt ("2012 Loan Contract"). (*Id.* at ¶ 3; DE 54-48 (Wardel Decl., Ex. UU)). Among the provisions were covenants and/or warrants by OpenPeak that (a) denied the past or ongoing occurrence of events that have or would reasonably be expected to have a "Material Adverse Effect"; (b) certified that "no report, Advance Request, or financial statement" submitted by OpenPeak contained any "material misstatement[s]" or omissions of fact and that all such documents were "prepared in good faith based on assumptions to be reasonable at the time"; and (c) agreed not to make any changes to its "accounting policies or reporting practices" that were inconsistent with [Generally Accepted Accounting Principles ("GAAP")]." (*Id.* at ¶ 4). In addition, the 2012 Loan Contract required Open Peak to submit to Hercules, along with certain financial statements, monthly "Compliance Certificates," which affirmed that the financial statements were prepared in accordance with GAAP. (*Id.*).

On March 24, 2014, OpenPeak and Hercules refinanced the 2012 Loan Contract through the 2014 Senior Term Debt ("2014 Loan Contract"). (*Id.* at ¶ 12; DE 54-49 (Wardel Decl., Ex. VV)). The 2014 Loan Contract extended a guaranteed $10.5 million ("first tranche") to OpenPeak, part of the proceeds of which went to pay down the remaining principle and interest due on the 2012 Loan Contract. (Warden Decl., Ex. VV at 1). As an additional incentive, the restructured loan provided that if OpenPeak met certain revenue milestones, it could obtain an additional $4.5 million in loans ("second tranche") and periods of interest-only repayment. (*Id.* at 1-2). The 2014 Loan Contract contained the same warranties and covenants as its predecessor.

(PSOF at ¶ 12). On October 30, 2014, Hercules permitted OpenPeak to draw the second tranche. (*Id.* at ¶ 53).

Between January 13, 2014 and October 30, 2014, Defendants exchanged multiple correspondences or held in-person meetings with Hercules agents regarding OpenPeak's financial status and prospects for obtaining capital investment, as well as the growth potential of the ADAM platform – and in particular, the success of AT&T's Toggle rollout pursuant to the MRA. The threshold matter of debate is whether Defendants, in making representations on these subjects, conveyed inaccurate information. If so, the next question is whether they did so negligently or fraudulently in light of the Compliance Certificate and the warranties and covenants contained in the two Loan Contracts.

To establish Defendants' representations, Hercules points to financial statements and projected revenue models sent by Barclay to Hercules (*id.* at ¶¶ at 6-8, 13-14, 24, 26, 32-33, 40); optimistic statements made by Barclay and Gittleman to Hercules concerning OpenPeak and ADAM's performance (*id.* at ¶¶ 5-6, 9, 13, 25, 27-28, 30-31, 34-35, 37, 41-42); and the warranties, covenants, and Compliance Certificates signed by Kwon or Barclay and delivered to Hercules (*id.* at ¶¶ 11, 26, 54). Hercules compares those representations to evidence purporting to contradict Defendants' rosy forecasts. These include a second, "internal" set of accounting records on NetSuite reporting less income than in the statements and spreadsheets sent to Hercules (*id.* at ¶¶ 15, 20, 44, 46, 49, 51); testimony from former officers about deviations of the delivered financial statements from GAAP standards (*id.* at ¶ 16); testimony from Steven Richards, OpenPeak's former Vice President for Finance, asserting that the company's revenue forecasts were "unfeasible" and "aggressive" (*id.* at ¶¶ 17-18); and reports about the technological problems with and unpopularity of the ADAM platform (*id.* at ¶¶ 15, 20, 45, 47-48, 50). Hercules' officers affirm that they relied on Defendants' representations in deciding to

4

restructure OpenPeak's debt through the 2014 Loan Contract (*id.* at ¶¶ 21-22) and to permit OpenPeak to draw on the conditional second tranche contemplated in that contract (*id.* at ¶ 53). They state further that Hercules was not aware of any of the "adverse information" about OpenPeak (*id.* at ¶¶ 51-52, 55) until January 15, 2015, when Glen Farmer, OpenPeak's Finance Director, which allegedly demonstrated that certain Toggle revenue accrued in earlier periods had been restated later (*id.* at ¶ 56). Those same officers testify that had they known about the adverse information at the time, Hercules would not have engaged in either transaction and would "immediately [have] taken steps to exit the credit facility." (*Id.* at ¶¶ 23, 55). Instead, says Hercules, it only took those steps in January, 2015, following Farmer's disclosures. (*Id.*). Defendants, however, claim that Hercules did not take "any material steps" to withdraw from the loan arrangement until OpenPeak missed a scheduled payment on January 14, 2016. (DSOF at ¶ 55).

In response, Defendants cite to their own affidavits, as well as the deposition testimony of other OpenPeak officers, to show, *inter alia*, that the two sets of accounting records were not incompatible (DSOF at ¶¶ 15, 23); that ADAM was a "fully functioning and fully tested" platform (*id.*); that it was appropriate to restate certain revenue figures; (*id.* at ¶ 20); and that OpenPeak's "senior leadership" reasonably and "sincerely believed" that the company could meet the forecasts delivered to Hercules and prepared all financial statements in good faith (*id.* at ¶¶ 18-19, 22, 36).

Hercules filed a complaint in this Court against Defendants on September 29, 2016. (DE 1). The complaint was amended twice (DE 6 & 42), most recently on May 25, 2017 (DE 42). The Second Amended Complaint contains six counts against Defendants: two each for negligent representation (Compl. at ¶¶ 17-84, 110-154); fraud/fraudulent misrepresentation (*id.* at ¶¶ 85-103, 155-183); and civil conspiracy to defraud (*id.* at ¶¶ 104-109, 184-189). Discovery ensued

5

and the instant Motions followed. The Hercules Motion requests that the Court award summary judgment solely with respect to the two negligent misrepresentation counts. Defendants' Motion does not move the Court directly to resolve any legal claims, but asks merely that it construe the meaning of allegedly unambiguous terms in Amendment 6.[3]

## II.   LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)(1)(A)). Where the non-moving party bears the burden of proof on an issue at trial, the movant may simply "[point] out to the district court [] that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. After the movant has met its burden under Rule 56(c), the burden shifts to the non-moving party to establish that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986).

Although all reasonable inferences are to be drawn in favor of the non-moving party, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. The non-moving party may not rest upon the mere allegations or denials of the

---

[3] According to Hercules, the construction of Amendment 6 is relevant to determine whether Defendants violated accounting standards by restating certain revenue in financial statements and spreadsheets sent to Hercules. (DE 70 at 3). Defendants deny that they seek anything more than to clarify the provisions at issue (DE 79 at 6), but do argue that AT&T paid $8 million pursuant to Amendment 6 and that it is this payment which Hercules alleges was not recorded in a manner compliant with GAAP standards. (DE 51 at 2).

adverse party's pleadings, but instead must come forward with "specific facts showing that there is a *genuine issue for trial*." *Id.* at 587 (citing Fed. R. Civ. P. 56(e)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). If the non-moving party fails to make a sufficient showing on an essential element of her case on which she has the burden of proof, the moving party is entitled to a judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323.

## III.  DISCUSSION

The cross-motions deal with overlapping issues. As mentioned above, only the Hercules Motion requests a dispositive determination on any claims. I therefore consider that motion first.

### A. *Hercules Motion*

Hercules seeks summary judgment as to the negligent misrepresentation counts, which are distinct from each other only in that they pertain to different transactions and time periods during the relationship between OpenPeak and Hercules. This Court's subject matter jurisdiction arises through the complete diversity of the Parties. *See* 28 U.S.C. § 1332; (Compl. at ¶ 1). When sitting in diversity, federal courts "apply the substantive law of the forum state unless federal constitutional or statutory law compels a contrary result." *Admiral Ins. Co. v. Feit Mgmt. Co.*, 321 F.3d 1326, 1328 (11th Cir. 2003); *see also Hanna v. Plumer*, 380 U.S. 460, 465 (1965) (in diversity cases, federal courts bound by state substantive law). The Parties do not dispute that Florida law governs the claims at issue here. Negligent misrepresentation is a common law tort. In Florida, a plaintiff alleging this tort must establish four elements: that "(1) there was a misrepresentation of material fact; (2) the representer either knew of the misrepresentation, made

7

the misrepresentation without knowledge of it truth or falsity, or should have known the representation was false; (3) the representer intended to induce another to act on the misrepresentation; and (4) injury resulted to a party acting in justifiable reliance upon the misrepresentation." *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Co., Inc.*, 607 F.3d 742, 747 (11th Cir. 2010) (quoting *Baggett v. Electricians Local 915 Credit Union*, 620 So. 2d 784, 786 (Fla. 2d DCA 1993)). Hercules argues that, in light of the undisputed material facts, all four of these factors are satisfied. I disagree.

First, there is a genuine dispute as to whether Defendants misrepresented any material fact. As discussed above, Hercules' position that Defendants communicated a distorted picture of OpenPeak's profitability rests heavily on the differences between (a) informal characterizations, spreadsheet forecasts, and financial statements, on the one hand and (b) the internal NetSuite accounting records and testimonies of certain Hercules and OpenPeak officers (particularly, Steven Richards), on the other. With respect to the NetSuite records, it appears that their inconsistency with the documents sent externally turns, to a large degree, on the legitimacy of OpenPeak's accounting practices under GAAP and/or the correct categorization of certain Toggle licenses. Each side relies on experts who will testify on this issue. "[A]llegations of noncompliance with [] accounting standards normally raise questions of fact concerning the acts or omissions which allegedly constitute a violation of an applicable standard." *Raytheon Co. v. United States*, 747 F.3d 1341, 1352 (Fed. Cir. 2014) (discussed particularly with respect to government's burden of proving defense against contractor's pension recover claims); *see also In re Burlington Coat Factory Sec. Litigation*, 114 F.3d 1410, 1421 (3d Cir. 1997) ("assuming that consistency with GAAP is enough to preclude liability, it is a factual question whether [defendant's] accounting practices were consistent with GAAP"). Neither are the testimonies of the Hercules and OpenPeak officers dispositive. The deposition transcripts and affidavits show

that some executives took a far more pessimistic view of OpenPeak's future revenue, potential acquisition, and product viability than did Defendants and others. But whether Defendants' statements and figures constituted misrepresentations at the time they were communicated boils down to a question of credibility that the Court can resolve only in its capacity as factfinder.

Second, even assuming that Defendants misrepresented material facts, it is not entirely clear whether Hercules' reliance thereon was justified. Hercules argues that because Kwon and Barclay executed documents certifying the accuracy of the financial information, it was relieved of any duty to independently investigate OpenPeak's representations. Defendants respond that Hercules was a savvy investment company and thus should be expected to do some legwork to confirm information about OpenPeak's financials and product. Again, the correct position can be determined only by submitting the evidence to trial. *See E. Cement v. Halliburton Co.*, 600 So. 2d 469, 471 (Fla. 4th DCA 1992) (in fraudulent representation case, presence of competing evidence on justifiability of reliance precluded summary judgment); *T.D. McCurley v. Auto-Owners Ins. Co.*, 356 So. 2d 68, 69 (Fla. 1st DCA 1978) (same); *Wolfe v. Chrysler Corp.*, 734 F.2d 701, 704 (11th Cir. 1984) ("Whether [plaintiff] in fact relied, and, if so, whether his reliance of [defendant's] representations was justified under the circumstances were questions for the jury to resolve."). Further, the extent to which Hercules was damaged by any misrepresentations it relied upon is intertwined with substantive questions of liability – especially in light of Hercules' assertion that Defendants' misrepresentations were so reckless or wanton so as to entitle it to punitive damages. Accordingly, summary judgment on the negligent misrepresentation counts is denied.

### B. Defendants' Motion

Summary judgment is also not appropriate as to Defendants' Motion. Defendants ask the Court to construe language in Amendment 6 which may bear on Defendants' fidelity to the

9

GAAP standards. Their question is whether a mandated billing practice applies to certain licenses that Defendants refer to as "Nonrefundable Perpetual Licenses" (as opposed to "Additional Perpetual Licenses"), which they claim are categorically exempted from the billing provisions. While the answer to this question may ultimately relate to a material element of Hercules' claim, it is not itself necessarily dispositive of any claim or element thereof. Therefore, I decline the invitation to render what would amount to an impermissible advisory opinion on a question of contract interpretation. *Malu v. United States Attorney Gen.*, 764 F.3d 1282, 1290 (11th Cir. 2014) (prohibiting advisory opinions). Defendants' Motion is also denied.

**ORDERED** and **ADJUDGED** that:

(1) Plaintiff Hercules Capital, Inc.'s (f/k/a Hercules Technology Growth Capital, Inc.) Motion for Partial Summary Judgment (DE 53) is **DENIED**;

(2) Defendants Daniel J. Gittleman, David Barclay, and Howard A. Kwon's Motion for Partial Summary Judgment (DE 51) is **DENIED**; and

(3) Defendants Daniel J. Gittleman, David Barclay, and Howard A. Kwon's Motion to Strike Plaintiff's Reply (DE 82) is **DENIED**.

The Parties are reminded that Calendar Call is set for August 2, 2017 at 1:15 p.m. This case will proceed to a bench trial during the two-week period beginning August 7, 2017.

**SO ORDERED** in Chambers, at West Palm Beach, Florida, this 27 day of July, 2017.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

cc: All Counsel of Record